UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MEGAN AYCOCK, *individually and on behalf of her minor child F.A.*,

Plaintiff,

v.

TAO MOTOR, INC., and VELOZ POWERSPORTS, INC.,

Defendants.

**DECISION AND ORDER**

6:25-CV-06074 EAW

---

Plaintiff Megan Aycock ("Plaintiff"), individually and on behalf of her minor child F.A., an infant, brought this products liability action on January 31, 2025, against defendants Tao Motor, Inc. ("Tao Motor") and Veloz Powersports, Inc. ("Veloz"). (Dkt. 1). Plaintiff and Tao Motor reached a settlement agreement, and Plaintiff filed a motion requesting the Court's approval of the agreement. (Dkt. 25). For the following reasons, the motion to approve the settlement is granted.

## BACKGROUND

Plaintiff alleges that F.A. sustained severe burns on her ankle from hot engine oil that "suddenly exploded from the engine" of a dirtbike manufactured by Tao Motor while she was riding it. (Dkt. 1 at ¶ 10). As a result of this injury, F.A. was required to undergo a skin graft operation to replace the skin on her ankle. (*Id.* at ¶¶ 13-14). In its answer to the complaint, Tao Motor asserted cross claims against Veloz for indemnity and contribution. (Dkt. 10). Following mediation, Plaintiff and Tao Motor agreed to settle.

- 1 -

(Dkt. 18; Dkt. 22).  Plaintiff filed a motion for the Court's approval of the settlement on April 30, 2026.  (Dkt. 25).  The Court reviewed Plaintiff's submissions in support of the motion and entered a Text Order requesting further submissions from Plaintiff.  (Dkt. 26).  Plaintiff filed the supplemental information shortly thereafter.  (Dkt. 27).

The Court held a hearing on June 23, 2026, which was attended by Plaintiff, the infant F.A., Plaintiff's counsel, and counsel for Tao Motor.  (Dkt. 30).  At the hearing, the Court confirmed that F.A. approved of the settlement and counsel for Plaintiff and Tao Motor confirmed that neither party intended to pursue the claims asserted against Veloz, agreeing that this settlement resolves the action.  The Court also requested Plaintiff's counsel to make additional submissions, specifically a summary of the hours worked on the matter and counsel's billing rate in order for the Court to determine if the attorney's fee award outlined in the settlement agreement was reasonable, and information addressing whether it is permissible to deduct costs from the gross settlement amount before calculating the attorney's fee.  The Court permitted Plaintiff's counsel to submit this material *ex parte*, without objection from Tao Motor, and counsel sent the material directly to the undersigned's chambers email address on June 24, 2026.  The Court then filed these documents under seal.  (Dkt. 31; Dkt. 32).

## DISCUSSION

### I.    Legal Standard

Pursuant to Rule 41 of the Local Rules of Civil Procedure, the Court is required to approve settlements of actions on behalf of infant plaintiffs.  Loc. R. Civ. P. 41(a)(1)(A).  The proceeding on an application to settle an infant's claim must conform, as nearly as

possible, to sections 1207 and 1208 of New York's Civil Practice Law and Rules ("C.P.L.R."). *Id.* But the Court may "dispense with any New York State requirement" for good cause shown. *Id.*

"In determining whether an infant settlement agreement should be approved, 'the Court's role is to exercise the most jealous care that no injustice be done to the infant.'" *Leone v. Cent. Valley Sch. Bd. of Educ.*, No. 6:17-cv-01374 (MAD/ATB), 2021 WL 9666544, at *1 (N.D.N.Y. Mar. 31, 2021) (quoting *Kapusta v. Vanacore*, No. 5:17-CV-0897, 2018 WL 5777767, at *1 (N.D.N.Y. Nov. 2, 2018)). "The analysis of an infant settlement agreement centers on whether: (1) the best interests of the infant are protected by the terms and conditions of the proposed settlement; and (2) the proposed settlement, including any legal fees and expenses to be paid, as part of the proposal, are fair and reasonable." *Id.* (citation modified).

"There is no bright-line test for concluding that a particular settlement is fair." *Orlander v. McKnight*, No. 12 Civ. 4745(HBP), 2013 WL 4400537, at *3 (S.D.N.Y. Aug. 15, 2013) (citation omitted). "There is a strong presumption that a settlement is fair and reasonable where '(i) the settlement is not collusive but was reached after arm's length negotiation; (ii) the proponents have counsel experienced in similar cases; [and] (iii) there has been sufficient discovery to enable counsel to act intelligently.'" *Campbell v. City of New York*, No. 15 CIV. 2088 PAE, 2015 WL 7019831, at *2 (S.D.N.Y. Nov. 10, 2015) (quoting *Orlandi ex rel. Colon v. Navistar Leasing Co.*, No. 09 CIV. 4855 THK, 2011 WL 3874870, at *2 (S.D.N.Y. Sept. 2, 2011)). "Other factors to consider include the complexity, and expense, and likely duration of litigation and the risks of establishing both

liability and damages." *Id*. (citation modified). "Moreover, courts give significant deference to a guardian's view that the settlement reached is fair and reasonable to an infant plaintiff." *Orlandi*, 2011 WL 3874870, at *2; *see also Orlander*, 2013 WL 4400537, at *4 ("[A] settlement negotiated by the natural guardian of an infant is presumptively fair and in the best interests of the child.").

## II.    The Total Settlement Amount is Approved

### A. Settlement Amount and Structure

Plaintiff seeks the Court's approval to settle the case for $200,000. (Dkt. 25-1 at ¶ 6). After thorough review of the papers submitted in support of the motion, including the supplemental submissions, and the discussion held at the hearing on June 23, 2026, the Court approves the settlement and grants the motion.

Plaintiff's submissions provide information required by C.P.L.R. § 1208. The submissions include a signed and notarized declaration from Plaintiff, who is F.A.'s natural parent and representative. (Dkt. 25-1). That declaration includes the information required by C.P.L.R. § 1208(a), although the Court notes that F.A.'s date of birth and full name have been appropriately redacted in a manner consistent with Fed. R. Civ. P. 5.2(a) and Plaintiff's supplemental declaration includes the list of physicians who treated F.A. and addresses that there are no other actions to recover on the same claim. (*See* Dkt. 27 at ¶¶ 3-4). Plaintiff's supplemental declaration also states that medical expenses were paid through a New York Medicaid program, and that there is a lien in the amount of $464.92. (*Id.* at ¶ 2). Plaintiff approves of the settlement and requests the Court's approval as well. (Dkt. 25-1 at ¶ 9).

The attorney affirmation from Plaintiff's counsel, Michael Donlon of the law firm Welch, Donlon, & Czarples PLLC (Dkt. 25-2), and supplemental attorney affirmation (Dkt. 27-1) provide the information required by C.P.L.R. § 1208(b). The services rendered by counsel included conducting an initial investigation to determine the manufacturer and distributer of the dirtbike, retaining an expert to determine any mechanical failure associated with the dirtbike, marshaling records, initiating litigation, engaging in discovery, and attending two mediation sessions. (Dkt. 25-2 at ¶ 6). Plaintiff's counsel offers that the settlement amount of $200,000 is fair and reasonable in light of the injuries sustained by F.A., her physical recovery, and the additional costs and risk associated with further litigation. (*Id.* at ¶ 7). F.A.'s medical records associated with the injury and skin graph are annexed to the attorney affirmation. (Dkt. 25-3). Plaintiff's counsel states he has never had a direct or indirect interest adverse to F.A. (Dkt. 27-1 at ¶¶ 3-4).

With respect to the disposition of the settlement proceeds, under C.P.L.R. § 1206(c), the Court may order the settlement funds be deposited in a bank or federal credit union until the infant reaches eighteen years of age, at which point the funds may be withdrawn. The submissions state that the settlement funds will be deposited in an account maintained by ServU Federal Credit Union bank for the benefit of F.A., not to be accessed until she reaches eighteen years of age. (Dkt. 25-1 at ¶ 8; Dkt. 25-2 at ¶ 11).

The Court has considered the best interests of F.A. in this case and whether she is protected by the terms and conditions of the proposed settlement. The settlement will allow the infant to avoid further litigation of this matter, which would likely incur additional costs that would diminish any award recovered by F.A. *See Campbell*, 2015 WL 7019831, at *3

- 5 -

(approving infant settlement where "the costs of litigation could well have significantly diminished any award [the infant] would have recovered had he proceeded to trial and won."). Further, the infant's mother, who is the plaintiff in this action, approves of the proposed settlement, to which the Court gives significant deference. *See B.G. v. City of New York*, No. 23-CV-3761 (KPF), 2026 WL 17163, at *4 (S.D.N.Y. Jan. 2, 2026) ("[I]t is well-settled that a compromise negotiated by an infant's natural guardian is presumptively fair and in the best interests of the child.").

The Court has also considered the fairness and reasonableness of the settlement. The parties reached the proposed settlement through arms-length mediation, which supports the fairness of the settlement and dispels any concern regarding collusion. *See Allen v. Robert's Am. Gourmet Food, Inc.*, No. 07-CV-2661(NGG)(ETB), 2009 WL 2951980, at *11 (E.D.N.Y. Sept. 8, 2009). In addition, Plaintiff's counsel states that he has not directly or indirectly become concerned in the settlement at the instance of a person with interests adverse to the infant, nor has he received any compensation from such party, and he has not represented any other person asserting a claim arising from the same occurrence. (Dkt. 27-1 at ¶¶ 3-4).

The Court has also considered the duration of the litigation and whether there has been sufficient discovery as to Plaintiff's claims. This case has been pending since January 2025, and the parties have engaged in written discovery. Plaintiff's counsel retained an expert in the field of motorcycle mechanics to assess the potential mechanical failure of the dirtbike's engine. (Dkt. 25-2 at ¶ 6). Accordingly, the Court believes that there has been sufficient discovery to allow counsel to act intelligently. Furthermore, the parties

engaged in two mediation sessions with an independent mediator, and settled after the second session.  (Dkt. 18; Dkt. 22).

In sum, the Court considers the settlement amount to be fair and reasonable considering the infant's injury.  Accordingly, the Court will approve the proposed settlement amount of $200,000.

### B.  Attorney's Fees and Costs

In the supplemental submissions provided to the Court after the hearing, Plaintiff's counsel revised the amount sought in attorney's fees to $48,125.00, and reduced the amount sought in costs to $2,620.65.[1]  (Dkt. 32 at 1).  "With respect to any request for attorney's fees in the context of an infant's settlement, the Court has an independent obligation to scrutinize the appropriateness of counsel's requested compensation, so as to protect the interests of the infant client."  *D.J. ex rel. Roberts v. City of New York*, No. 11 CIV. 5458 JGK DF, 2012 WL 5431034, at *3 (S.D.N.Y. Oct. 16, 2012), *report and recommendation adopted sub nom. Roberts v. City of New York*, No. 11 CIV. 5458 JGK, 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012); *see also* N.Y. Jud. Law § 474.  "This requirement arises from the court's duty to protect infants and other wards of the court."  *I.M. by Hartmann v. DiCostanzo*, No. 16-CV-07608 (LJL), 2020 WL 1330241, at *5 (S.D.N.Y. Mar. 23, 2020) (quoting *White v. DaimlerChrysler Corp.*, 57 A.D.3d 531, 533 (2d Dep't 2008)).  Any contingency fee agreement between counsel and the infant's

---

[1]     Plaintiff's counsel reduced the total amount sought in costs by $52.00, which counsel states represented a prospective filing fee that was not charged.  (Dkt. 32 at 1).

guardian is "advisory only." *Martegani v. Cirrus Design Corp.*, 687 F. Supp. 2d 373, 378 (S.D.N.Y. 2010).

### 1. Counsel's Revised Fee Request

In the original request to the Court, Plaintiff's counsel sought $50,000 in attorney's fees, constituting 25% of the gross settlement amount, in addition to $2,672.65 in costs.[2] (Dkt. 25-2 at ¶ 11). This requested percentage was less than the one-third amount of the gross settlement that was agreed-to in counsel's contingency fee agreement with Plaintiff. (Dkt. 25-6). The initial submissions also provided for the distribution of costs after the attorney's fees were deducted from the settlement amount. (Dkt. 25-2 at ¶ 11; Dkt. 25-1 at ¶ 6). This arrangement was pursuant to the retainer agreement, in which counsel's law firm agreed to pay for the costs and expenses related to this matter in exchange for calculating the attorney's fee from the gross settlement before costs were deducted from any award. (Dkt. 25-6).

Notably absent from Plaintiff's submissions were any billing records documenting the amount of time counsel worked on the matter and associated billing rates—making it impossible for the Court to determine whether the requested contingent fee was reasonable. *See Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("[T]he lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" (citation omitted)). At the hearing, the Court requested Plaintiff's counsel submit the number of hours worked on this matter and

---

[2] Plaintiff's counsel stated in his initial affirmation in support of the settlement that a 25% fee is "standard for infant injury cases." (Dkt. 25-2 at ¶ 8).

his billing rate and provide a further submission on the permissibility of deducting costs after calculating the attorney's fee from the gross settlement. (Dkt. 30).

Plaintiff's counsel sent the additional material directly to the undersigned's chambers email address, as permitted by the Court and without objection from opposing counsel. The Court arranged for the additional submissions to be filed under seal. (*See* Dkt. 31; Dkt. 32). The submissions included a letter to the Court addressing costs, in which Plaintiff's counsel agreed the attorney's fee calculation should be made after the deduction of costs (Dkt. 32 at 1), and an attorney affirmation addressing the total time counsel spent working on this matter (Dkt. 31). Plaintiff's counsel readjusted the calculation of costs and the contingency award, now deducting costs from the gross settlement amount with the contingency fee calculated from the net amount of $197,379.11. (Dkt. 32 at 1). Under that calculation, a contingency fee based on one-third of the settlement after costs would be $65,793.11. (*See id.*). But Plaintiff's counsel reaffirms his request for a reduced contingency award of only 25% of the settlement amount. (*Id.*). A contingency award based on 25% of the net settlement amount is $49,344.83. (*Id.*). Plaintiff's counsel further reduced his request after his own calculations of the lodestar, ultimately seeking $48,125.00 in attorney's fees. (*See* Dkt. 31 at ¶ 7; Dkt. 32 at 1). As explained below, the Court agrees that $48,125.00 is a reasonable attorney's fee.

### 2. The Lodestar Figure

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Orlander*, 2013 WL 4400537, at *6 (citation omitted); *see also D.J. ex rel.*

*Roberts*, 2012 WL 5431034, at *6 ("The 'starting point' in analyzing whether claimed attorney's fees are appropriate . . . is not Plaintiffs' fee agreement, but rather 'the lodestar–the product of a reasonable hourly rate and the reasonable number of hours required by the case.'" (quoting *Millea*, 658 F.3d at 166-67)).

There are two issues with Plaintiff's counsel's submissions regarding the calculation of the lodestar. The first is the billing rate provided by Plaintiff's counsel. A reasonable hourly rate is what a "reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 184 (2d Cir. 2008). "This rate should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Malletier v. Artex Creative Int'l Corp.*, 687 F. Supp. 2d 347, 359 (S.D.N.Y. 2010) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

In the attorney affirmation, Plaintiff's counsel provides a billing rate that is generally considered high for this District for an attorney with an equivalent level of experience. (Dkt. 31 at ¶ 6); *see, e.g.*, *Howard v. City of Rochester*, 780 F. Supp. 3d 423, 433 (W.D.N.Y. 2025) (noting that a requested rate of $475 in a discovery sanctions motion was "a *generous* rate for this district" but permitting the $475 rate due to the lack of opposition). Recent cases in this District have awarded $350 per hour to civil litigators with similar experience. *See, e.g.*, *Townsend v. Haza Foods, LLC*, No. 24-CV-6180-EAW-MJP, 2026 WL 809490, at *3 (W.D.N.Y. Mar. 24, 2026) (finding $350 to be an appropriate partner rate for the District); *Wright v. Rochester Sportfishing, Inc.*, No. 6:24-CV-06240 CJS CDH, 2025 WL 3703602, at *6-7 (W.D.N.Y. Dec. 22, 2025) (finding that a $350

- 10 -

hourly rate was appropriate for "Senior Litigation Counsel" with "over a decade [of experience] as a practicing attorney"). That said, there are examples of courts in this District permitting rates around $500 for more experienced attorneys. *See Xerox Corp. v. Conduit Glob., Inc.*, No. 21-CV-6467-EAW-MJP, 2024 WL 3548411, at *15 (W.D.N.Y. July 26, 2024) (finding a rate of $560 for well-regarded Rochester litigator with forty years of experience reasonable in complex commercial case), *aff'd*, No. 6:21-CV-06467 EAW, 2025 WL 586244 (W.D.N.Y. Feb. 24, 2025); *Capax Discovery, Inc. v. AEP RSD Invs., LLC*, No. 1:17-CV-00500-CCR, 2023 WL 140528, at *6 (W.D.N.Y. Jan. 10, 2023) (concluding that $450 was a reasonable rate for experienced trial counsel who had been practicing law since 1980 and tried over forty cases). Indeed, the court in *Xerox Corp.* observed that "[t]he Western District has found an hourly rate of $500 reasonable for attorneys with 'more than 20 years of experience.'" *Xerox Corp.*, 2024 WL 354841, at *15 (quoting *New York v. Grand River Enters. Six Nations, Ltd.*, No. 14-CV-910A(F), 2021 WL 4958653, at *4 (W.D.N.Y. Oct. 26, 2021)); *see also Capax Discovery, Inc.*, 2023 WL 140528, at *6 ("In the Western District, $400-$500 per hour is generally deemed a reasonable hourly rate for experienced trial counsel."). These cases all support the conclusion that Plaintiff's counsel's reasonable hourly rate should be lower than the rate he listed in the attorney affirmation.

Putting aside the issue of counsel's billing rate, Plaintiff's counsel did not keep contemporaneous records of the time spent on each task. (Dkt. 31 at ¶ 4). Instead, Plaintiff's counsel has estimated how much time he spent on each task after he reviewed his file in connection with the supplemental submissions. (*Id.*). The lack of

contemporaneous record-keeping prevents the Court from being able to calculate a reasonably reliable lodestar with precision.

"In contingency fee cases where an attorney has failed to keep contemporaneous time records reflecting the hours expended and the work performed, courts have taken the alternative approach of reducing the requested fee amount by up to thirty percent." *P3 v. Hilton Cent. Sch. Dist.*, No. 6:21-CV-06546 EAW, 2023 WL 7326048, at *9 (W.D.N.Y. Nov. 7, 2023). But the Court observes that Plaintiff's counsel has already reduced his requested attorney's fee by approximately 27%[3] by seeking a contingency fee based on one-quarter of the settlement amount after costs (and then reducing this amount slightly further based upon his own calculation of the lodestar), rather than one-third of the settlement amount as provided in the contingency fee agreement. Based on the Court's calculations, a 30% reduction of a one-third contingency fee based on the settlement amount after cost disbursements would lead to an attorney's fee award of $46,055.18. This is not substantially different from the $48,125.00 requested by Plaintiff's counsel, supporting a conclusion that the requested fee appears reasonable.

### 3. Other Factors

In addition to the lodestar figure and the contingency fee agreement, a court considers other factors in evaluating the requested fee, including: (1) the skill, diligence, and expertise of counsel; (2) the result achieved; (3) the time and labor devoted to the case;

---

[3] This is based on the percent difference between the one-third amount sought in the contingency fee agreement after the disbursement of costs ($65,793.11) and the amount Plaintiff's counsel now requests as attorney's fees ($48,125.00).

(4) the customary fee charged by members of the Bar for similar services; and (5) the certainty of compensation at the beginning of the case. *See I.M. by Hartmann*, 2020 WL 1330241, at \*5 (citing *White*, 57 A.D.3d at 535).

With respect to the skill, diligence, and expertise of counsel, the Court notes the experience listed in the *ex parte* submission (*see* Dkt. 31 at ¶ 6) and the Court has no reason to doubt that experience and the skill, diligence, and expertise of counsel related to this matter.

With respect to the result achieved, Plaintiff's counsel states that the settlement is fair and reasonable and avoids incurring additional costs associated with protracted litigation. (Dkt. 25-2 at ¶ 6). The Court agrees that the settlement achieved by Plaintiff is fair and reasonable considering the nature of the allegations and the injury sustained by F.A.

With respect to the time and labor spent on this case, Plaintiff's counsel was only able to provide a conservative estimate of the time he spent working on this matter because he did not keep contemporaneous time records. (Dkt. 31 at ¶ 4). But the Court notes that, based on counsel's representations, he diligently prosecuted this action by conducting fact investigation, engaging an expert, assembling relevant records, and preparing for and attending two mediation sessions. (*See* Dkt. 25-2 at ¶ 6; Dkt. 18; Dkt. 22).

As to the customary fee charged by members of the bar for similar services, the Court is cognizant that courts have found one-third contingency agreements to be "usual and customary" and have approved such fee agreements in infant settlement cases. *See Orlander*, 2013 WL 4400537, at \*8. Plaintiff's counsel only requests a contingency fee

based on one-quarter of the recovery, which the Court observes is to the benefit of the infant.

Finally, as to the certainty of the compensation at the beginning of the case, Plaintiff's counsel states that pre-litigation negotiations were unsuccessful (Dkt. 25-2 at ¶ 6) and this case required two mediation sessions before the parties reached a resolution. This indicates that Plaintiff's success was not necessarily a foregone conclusion at the time the action was commenced.

After considering all the aforementioned factors, and in consideration that Plaintiff's counsel has already reduced his requested attorneys fee by 27%, the Court concludes that an attorney's fee award of $48,125.00, as requested by Plaintiff's counsel, is fair and reasonable.

### 4. Costs

"[W]hen courts in [this] Circuit are asked to approve the fairness of a settlement that includes fees and costs, they routinely require attorneys to substantiate the claimed costs – which reduce the net settlement recovery to the plaintiff – through invoices, receipts, or similar documentation." *Acosta Est. of Acosta v. United States*, No. 23-CV-3551 (VSB) (BCM), 2025 WL 1343806, at *3 (S.D.N.Y. Feb. 18, 2025). "Where an attorney fails to provide suitable documentation to substantiate the costs incurred, a court may decline to award any costs." *Martegani*, 687 F. Supp. 2d at 379. Plaintiff's counsel provided documentary support of the costs in his supplemental submissions emailed to chambers. (Dkt. 32). Receipts are provided for all the claimed costs except for two items. The first is a $275 fee paid to an individual related to the investigation of the dirtbike. Plaintiff's

counsel's only support for this cost is an email presumably sent to a staff member of counsel's law firm requesting that a check be made out to the investigator. (Dkt. 32 at 14). There is no invoice or bill associated with this charge. The second is a line item entitled "[c]umulative postage" for $75.78 for which no documentation is provided.

While these items lack sufficient documentary support, Plaintiff's counsel has submitted an affidavit attesting that these amounts were incurred as costs in connection with the litigation. (*See* Dkt. 25-2 at ¶ 8). Under the circumstances, the Court finds this adequate to support the award of the requested costs. The Court accordingly grants a total of $2,620.65 to be disbursed for costs.

## CONCLUSION

For the foregoing reasons, the Court grants the motion to approve the infant settlement agreement (Dkt. 25). The proposed total settlement amount of $200,000 is approved. Plaintiff's counsel's request for $48,125.00 in attorney's fees is approved and the amount to be disbursed for costs is $2,620.65.

Accordingly, it is hereby

ORDERED that petitioner's motion to approve the infant settlement agreement (Dkt. 25) is granted; and it is further

ORDERED that petitioner, Megan Aycock, the parent and natural guardian of the infant F.A., is authorized to execute the settlement agreement and relevant releases required to obtain the settlement funds for the benefit of F.A.; and it is further

ORDERED that $50,745.65 of the settlement amount, comprised of $48,125.00 in a reasonable attorney's fee and $2,620.65 in costs, shall be paid to the law firm Welch, Donlon & Czarples PLLC, and it is further

ORDERED that a check be issued from the settlement funds in the amount of $464.92 to the New York State Department of Health to reimburse a medical assistance lien; and it is further

ORDERED that the remainder of the settlement, $148,789.43, shall be deposited into a ServU Federal Credit Union account with F.A. as the sole owner of the account. No withdrawals nor bank transfers shall be permitted from this account without an order from this Court until the infant, F.A., reaches the age of 18 years old, whereupon she may make withdrawals or bank transfers without additional Court order; and it is further

ORDERED that within 10 days of receipt of the settlement funds, Plaintiff's counsel shall submit to the Court proof from the financial institution that the restrictions set forth in this Order have been placed on the account; and it is further

ORDERED that the parties shall file a stipulation of discontinuance within 30 days from the date of entry of this Order.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      July 8, 2026
            Rochester, New York